appeal number 18-1963. Attorney Lizarrabar, please introduce yourself for the record and proceed with your argument. Good morning, judges. My name is Lydia Lizarrabar. In this case, the record shows that Appeal Council failed to bring the petition on appeal. And that has the initial effect that it bars review in a 2255 petition. Now, the record supports that Appeal Council was well aware of this breaking issue. He could have adopted or joined co-appellant's arguments in the case. And in fact, he had reserved the right to do so in his opening brief. The government states in their briefs that this is trial strategy. I failed to see how this can be trial strategy. Because that action, failing to bring the breaking issue on direct appeal, in no way advances the case of Sandra Flores. On the contrary, it barred that it could be reviewed afterwards. Now, the record doesn't show why that happened at all. There is nothing on the record to show why Appeal Council did not bring on direct appeal the breaking issue. The government has implied that maybe it's because he read and saw orders of the court, opinions of the court, and decided it wasn't worth it. That is simply pure speculation. There's no record, there's nothing to support that that is so. Trial strategy that doesn't advance, in any way or form, the case of Sandra Flores is not a reason to, at this juncture, state that it is so because it was trial. Ms. Arriba, you have a limited amount of time, and you've made the argument for deficient performance very well in your brief. Could I suggest that you turn to the question of whether or not there was prejudice? Yes, Your Honor. In this case, evidence suppressed by the government, Your Honor, is material as to Delgado and Marinos. In fact, Delgado gives context to those videos. Delgado is the one who testifies what is happening in those videos. So having evidence to impeach Delgado was indispensable at trial to be able to, in fact, meet or talk to the other trial cooperators, and they had, in fact, settled on what they would say. There is a letter, judges, in which Delgado states that he is the star witness. Not only that, he states that he is the best cooperator and will do everything the prosecutor says. That is a very powerful statement. I am willing to do what the prosecutor says. That trial attorney did not have to be able to use it. Prejudice, Your The letters and the notes. Another thing, Your Honor, is the so-called toilet notes. Berrios admitted that she had spoken with Delgado. Now, it has been said that inmates talk to each other from one floor to another through the toilet. Delgado also did not have them at all. So, having failed to, at that time, disclose that those letters and notes were there, available, it caused prejudice to Sandra Flores. Impeachment is a tool defense uses. It is the best tool you have to impeach a witness. So, just Delgado was central to Sandra Flores' defense. Even if there are videos, he was the one who gave context to those videos. If you go to the record, he is asked, this is Sandra Flores, correct? And she is given a package. I think you are repeating yourself here. I think you have made the point that the videos were narrated by one of the cooperators who were implicated by the grading materials. And so, do you have any other points? The notebooks, Your Honor, and I will be frank with you. I have never seen them. I have tried to locate them. I think that they are in your court. No one here in San Juan has even a copy of it, but from the case trial record, I wish to point out that there are two defendants, both named Sandra. Both have the same a.k.a. Sandy. One of them is Sandy Plame, and the other one is Sandy La Caderua. That's where those notebooks were. Now, during a trial, many times, the trial counsel had to ask, which Sandy are you talking about? And those notebooks, which I haven't seen, I have to record them, appear to have the same a.k.a. Sandy. Which one is it? I'm not sure I understand. You requested to see them, and you weren't able to see them? I'm sorry, I didn't hear you, Your Honor. You requested to see the notebooks, and you weren't able to obtain them? Yes, Your Honor. I even called your court, the first court of appeals, the government office, the clerk's office, the appeals office for the defendant. Nobody has copies of it. I haven't ever seen them. I just have the trial record. That's it. Did you file any motions or do anything about this? No, no, Judge. The last time I did call about this was Tuesday. I called your court, and then I was told that they were in your court, and I didn't file anything, no. I talked to the intake clerk, someone who gave me the information. Are you saying someone told you you couldn't look at them? I'm sorry, Judge, I didn't hear you. Are you saying that someone told you that you could not look at them? No, Judge, no, no. No one has ever said that. The only thing is that the clerk here didn't have the appeals office, the government office didn't have even a copy of it. Trial counsel doesn't have it. Defendant doesn't have it. The only place that I know that there are is in your court. Did you attempt to obtain these before you filed your brief? Yes, Your Honor. And when you didn't get them, why didn't you make some sort of motion? Your Honor, I had hoped that I would be able to get a copy from the government office, and I had spoken to them a few months ago, and they were then going to call me back. And that did not happen. They called the clerk's office. The clerk's office didn't know if they had them or not. It just felt like it took time, Judge, between one thing and the other, and things being closed. Well, it sounds like you had plenty of time to see them if you followed the proper procedures, but let me tell you, they have in two places, or three places, the initials SF, although they're rather cryptic otherwise. Were there any other participants, either indicted, unindicted, or involved, or anything like this, who had the initials SF? No. 7 and No. 8 was Sandra Flores, which is No. 8, a petitioner, and the other is Sandra Fernandez, La Paderua. That's time. Thank you. Thank you, Judge. Anything further from the court? I'll stand by the brief. Thank you, Attorney Lazarobar. At this time, you can mute your audio and video. Attorney Coleman, if you could unmute your audio and video, and introduce yourself on the record to begin. Good morning, Your Honors. May it please the court, my name is Robert Coleman. I represent the United States. As to the prejudice issue, what appellant fails to grapple with is that although the video and drug ledger evidence did come in through co-conspirator witness testimony, that testimony, in substantial part, is merely descriptive of what was in the video and the drug ledger. And in that regard, that evidence, that descriptive testimony is independent of any potential credibility issues raised by the purported Brady evidence. You're losing me on that. Let's take the ledger. Have you seen the ledger? No, I personally have not seen the ledger. We actually encountered the same issues that appellant did, and that we can't obtain the evidence either. We tried extensively, both within our office with the FBI, also with the court, to try to obtain copies. But the trial was so long ago that we were unable to find any. So you're telling me you, like Ms. Larizarabar, never filed any motion or never came and looked at what was in the file of the case, the court files? No, we've requested that, but we have not been provided copies. Did you request it in writing? No, I believe we called the court. And you called which court? The District Court and the Court of Appeals. And didn't you find out that they're in the record? We found out that the evidence does exist, but we could not be provided copies. What do you mean? The passive voice is confusing me. Sorry, the court indicated that it would not provide us copies when we contacted them recently. We, of course, tried before that to obtain them within our office to see if we had records anywhere. And after extensive search, we could not find any. But extensive search? I'm just puzzled how the United States... You have people in Boston who could walk over to the courthouse and look at the file, am I correct? Yes, there is a U.S. Attorney's Office up there. But we concentrated our efforts to try to find the materials here in Puerto Rico. We had reason to believe that they would be here. And once that failed, we contacted the court to see if we could obtain a copy. Well, having not seen the ledger, how are you able to make an argument to us that without the narration, the ledgers reveal that there's no prejudice? Because there's extensive testimony on the issue. So I'm going from the transcript, and there is extensive testimony about the ledger, but also about the video evidence. Just stick to the ledger for a second. The testimony is the narration, correct? Yes, the testimony is an explanation of what is in the drug ledger. Who gave that explanation? Zamora Berrios. That's the cooperator who they're claiming is tainted? Yes. So wouldn't the argument for no prejudice be much stronger if the claim was that the narration didn't matter because the ledger itself revealed participation? Yes, it would. But you're not in a position to tell us that because you haven't seen the ledger. No, and I'm of the belief that there are initials being used. I'm not trying to represent to the court that it says Sandra Flores, which it is possible that I would have been able to determine that had I seen the ledgers. But I'm essentially making that assumption against my own party. But if you can't represent that it's Sandra Flores with respect to the ledgers, how can the ledgers have inculpated her? Well, my position is that it does indicate Sandra Flores, but merely by indicating S.F. But her name, as I understand, her name doesn't appear. The initials S.F. appear. The initials S.F. appear followed by, from the testimony, the letters Y and O, referring to Sandra LaCadarua, who is the other S.F., and she is the one who is the bookkeeper. So that distinguishes the two. Yo means I in Spanish. That's not actually correct, and I don't see how you could say it since you haven't seen it. There are lines that, there are three lines that at the end say S.F. There's nothing after that. There's another line that says Y.O. But we've heard from opposing counsel that there were several people here who were involved in one way or another or mentioned as witnesses or sued who were S.F. So how do we know this isn't one of those other two S.F.s other than by the cooperator testimony? Well, that's the primary way, but there's other evidence, namely video evidence here too, where Sandra Flores is identified. My question was, how do we know that the S.F. that appears in the ledger is the defendant? Through the testimony. Of the cooperator? Yes. Now let me turn to the video. If you just watched the video, can you, could you watch, have you seen the video? No, I have not, Your Honor. Oh, my. We have the same issue with the video as with the ledger. But the testimony is extensive as to the video. That's from the cooperator. Yes, but it's, the transcript indicates that it's merely descriptive and there are multiple instances where that's clear. What do you mean it's merely descriptive? It's the cooperator's description. Yes, but the jury is. Which may or may not be credible. Well, that's correct, except when it's merely a description of who's on the video, that's up to the jury to decide whether. Suppose the video was so grainy you couldn't see anything. Would your argument still hold? Potentially not. However, there's no indication. Are you in a position to tell us that the video is sufficiently visible that you didn't really need to rely on the description? Yes, I have reason to believe that because that was a 15 day trial and that issue was never brought up that it was difficult to see the video. And the agent testified about, the agent who took the video testified that he shot it from only 75 or 80 feet away with perfect lighting. And he went on to describe individual's pants and their color and to identify Sandra Flores. This is the agent, not a co-conspirator. Identify Sandra Flores. Sandra Flores was in the courtroom. So the jury was able to make, to assess the validity of that identification and to weigh it against Berrios' later identification of Sandra on the video. But you couldn't tell what they're doing on the video. This is extraordinary. Our court has already held that to the extent the conviction relies on the three cooperators' testimony, then you've got prejudice. You've got Brady prejudice. So the whole case then turns on whether the government, I think, whether we could find that there's some other evidence independent of that so that we distinguish our prior holding. And everyone knows there's only two pieces of evidence that the government has even pointed to. And now we're finding out today that neither counsel arguing to us has even filed a motion to take a look at that or sent someone over from their office to take a look at it. How are we to give any weight at all to these oral arguments today? Well, there is also another issue, which is the ineffective assistance of counsel claim, which appellant needs to win on in order to show cause for having procedurally defaulted on the Brady claim by not making it on direct appeal. And as to the first wrong of the ineffective assistance of counsel claim, that's an objective analysis. So what the appellant's counsel was thinking at the appellate stage is not relevant. It's an objective standard as to what a reasonable attorney may have done. And that analysis cannot be done with the benefit of hindsight either. So we have to take that out of the equation. The attorney, the appellate attorney at the time, would have been making the determination as to whether to put forward the Brady argument without the benefit of this court's 2015 decision. And there's a strong presumption that counsel is acting reasonably here. And it's petitioner's burden to show that counsel was unreasonable. And as a result, petitioner has not been able to... Yes, so what we have is we have a criminal appeal in which two co-defendants are pointing to a rather egregious Brady violation. And the third defendant, with no substantial arguments on appeal otherwise, reading the briefs of the other parties decides not to adopt that argument. What possible strategic benefit could have been obtained by that? The appellate counsel at that time made other arguments. And he perhaps thought that making a Brady argument that, in his belief, may have been weak. As the district court thought it was weak as well, since the district court ruled against appellant here. That making the argument would have detracted from the other arguments that he was making. Suppose the record showed that the Brady argument was strong, objectively. If it's objectively strong, then that makes it more likely to be a decision that no reasonable attorney would take. However, I think that's a very high threshold here. And when we're dealing with a case where... That might depend on how much we have to rely on the cooperator's narration to find prejudice, right? If I may answer, I see that my time is up. Yes, go ahead. Yes, it may depend on that. However, it's a very high presumption that the appellate counsel has to make that decision without the benefit of hindsight. And here, what the appellate counsel knew is that the district court was not convinced by that argument. That there is some, at least arguable, independent evidence. And therefore, a reasonable attorney may have foregone that argument. Thank you, Mr. Coleman. Thank you very much. That concludes arguments in this case. Attorney Lazarabar and Attorney Coleman, you should disconnect from the hearing at this time.